

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**United States Bankruptcy Judge**

**Signed January 03, 2011**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: § | | IN PROCEEDINGS UNDER |
| § | | |
| SIDNEY PETERS § | | |
| § | | CHAPTER 7 |
| § | § | |
| DEBTOR § | | CASE NO. 08-41592-DML |
| § | | |
| MARCYLE WOODARD § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | ADVERSARY NO. 09-04137 |
| § | | |
| SIDNEY PETERS § | | |
| Defendant. § | | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### FINDINGS OF FACT

To the extent a Finding of Fact herein is also a Conclusion of Law, it shall be treated as such.

1. Sidney Peters ("Peters") filed a voluntary chapter 7 petition on April 7, 2008,

commencing the above-captioned case.

2. As required by 11 U.S.C. § 521, Peters filed his schedules and a statement of financial affairs (the "SOFA") along with his chapter 7 petition.

3. Peters signed his schedules and his SOFA declaring under penalty of perjury that the documents were true and correct to the best of his knowledge, information, and belief.

4. Peters graduated from Temple University with a degree in business in 1954. Peters enjoyed success as a teacher, real estate investment broker, and business man.

5. Peters also has educated himself about fine art. Peters testified at trial that he had read many books on art history. Furthermore, Peters was previously married to an art historian.

6. Peters owned and operated an art gallery in Fort Worth, Texas, for several years and was in the business of buying and selling paintings, serigraphs, and other reproductions of paintings. Peters testified that he was familiar with many of the resources used to value art.

7. Peters listed on his Schedule B "Art" and valued the "Art" at $2,400.00. The word "Art" was the sole description of the artwork in his schedules. At the 341 meeting of creditors, Peters told the chapter 7 trustee that the "Art" consisted of "nine or ten" pieces.

8. In fact, the "Art" owned by Peters consisted of a collection of sixteen (16) pieces including paintings, serigraphs, and other reproductions, the number and nature of which were not evident from his bankruptcy schedules.

9. Peters's sixteen (16) pieces of art were appraised by a qualified appraiser who testified at the trial that the "Art" had a fair market value of approximately $28,687.00 as of the petition date. Several of the individual pieces appraised for well over $500.00. In fact, shortly after filing his petition, Peters attempted to sell his original oil painting "Skipjack" for $4,700.00.

10. Peters may not have intentionally undervalued the art he owned when he filled out his schedules, but he made inadequate effort to determine the value of the individual pieces of the art, though he was well-acquainted with readily available resources from which he could have provided better estimates of value.

11. Peters has not amended his schedules to reflect more accurately the number, value, or quality of his artwork.

12. Peters knew or should have known that his description of "Art" was insufficient to give the chapter 7 Trustee and creditors notice of the number, kind, and quality of the artwork owned by Peters.

## CONCLUSIONS OF LAW

To the extent a Conclusions of Law herein is also a Finding of Fact, it shall be treated as such.

1. "The court shall grant the debtor a discharge unless . . . the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account." 11 U.S.C. § 727(a)(4)(A).

2. To establish a false oath under 11 U.S.C. § 727(a)(4), the creditor must show that (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *In re Pratt*, 411 F.3d 561, 566 (5th Cir. 2005). Fraudulent intent may be proven by showing either (1) actual intent to deceive or (2) a reckless indifference for the truth. *In re Mitchell*, 102 Fed. Appx. 860, 862 (5th Cir. 2004). Furthermore, a debtor has a duty to answer each question truthfully. *Id.* at 863. "[S]o a false answer to one question cannot be cured by providing true information in response to another question. . . . (noting that the purpose of the schedules is to obviate the need for the trustee and

creditors to conduct an investigation)." *Id.* (internal citations omitted).

3. "False oaths sufficient to justify denial of a discharge include a false statement or omissions on a debtor's schedules or a false statement by the debtor at the examinations during the course of the proceedings." *In re Hughes*, 353 B.R. 486, 503 (Bankr. N.D. Tex. 2006). The Fifth Circuit has explained that whether an error is material is not a question of value or whether it was detrimental to creditors, but a question of whether the subject matter of the error bears a relationship to the estate. *See id.* at 503-04 (explaining *In re Beaubouef*, 966 F.2d 174, 177-78 (5th Cir. 1992)). Assets, whether exempt or not, are material to a bankruptcy case. *In re Bullough*, 358 B.R. 261, 268 (5th Cir. 2007).

4. Just as fraudulent intent may be shown by a reckless disregard for the truth (*See Sholdra v. Chilmark*, LLP, 249 F.3d 380, 383 (5th Cir. 2001)), fraudulent intent may also be shown by a knowing failure to disclose regardless of the reasoning or intent of the debtor. *Neary v. Cline*, Case No. 09-45977-DML-7, Adversary No. 09-4424 (Bankr. N.D. Tex. October 6, 2010).

5. Peters made a false oath by omission when he failed to list and describe the individual paintings in his "Art" collection.

6. The failure to disclose the names and descriptions of the "Art" is material, because the failure to disclose bears a direct relationship to Peters's estate, and the existence and disposition of his property.

7. Had the names and descriptions of the "Art" been disclosed, Peters's art might have been further investigated by the chapter 7 Trustee and/ or creditors of the estate within the deadline to object to exemptions.

8.   Peters also made a false oath when he failed to provide a better estimate of the market value of the "Art."

9.   The value place on the "Art" by Peters bears a direct relationship to Peters's estate and the existence and disposition of his property and is a material false oath. This false oath prevented the chapter 7 Trustee from examining the true nature and value of the artwork and from determining whether the artwork was within the exemption limits claimed by debtor or whether the artwork, or some portion thereof, would be considered nonexempt and possibly be recovered by the estate for the benefit of creditors.[1]

10.   For the foregoing reasons, the Court finds that Peters's discharge should be denied in accordance with 11 U.S.C. § 727(a)(4).

11.   The Court reserves the right to make future findings of fact and conclusions of law.

### END OF FINDINGS OF FACT AND CONCLUSIONS OF LAW ###

---

[1]   As Peters claimed exemptions under 11 U.S.C. § 522(d), he only claimed interests in the artwork as exempt, and the value in excess of the exemptible amount may be realized by the estate, as the artwork itself remains property of the estate. *See Schwab v. Reilly*, 130 S.Ct. 2652 (2010).